IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| KERBEROS INTERNATIONAL, INC., | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) ) |
| UNIVERSAL PROTECTION SERVICE, L.P., | ) ) ) ) |
| Defendant. | ) |

Case 2:26-cv-2194-STA-tmp

ORDER GRANTING DEFENDANT'S MOTION
TO DISSOLVE TEMPORARY RESTRAINING ORDER
AND
DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

Defendant Universal Protection Service, L.P. d/b/a Allied Universal Security Services ("Allied") has moved, pursuant to Federal Rules of Civil Procedure Rule 65(b)(4), to dissolve the temporary restraining order ("TRO") obtained by Plaintiff Kerberos International, Inc. ("Kerberos") on February 24, 2026, in the Chancery Court of Shelby County. (ECF No. 11.) Kerberos filed a response to the motion on March 6, 2026 (ECF No. 31), and a motion for preliminary injunction or, alternatively, for an extension of the TRO that same day. (ECF No. 32.) Allied has filed a reply to Kerberos' response to its motion to dissolve the TRO. (ECF No. 33.) A hearing on the motion to dissolve the TRO was held on March 9, 2026. Based on the briefs filed by the parties, the arguments of counsel, and the applicable law, the Court finds that Allied's motion to dissolve the TRO should be **GRANTED**, while Kerberos' motion for preliminary injunction should be **DENIED**.

Background

Kerberos has the contract to provide protection services for several federal buildings in Memphis, Tennessee. Under that contract, Kerberos subcontracted with Allied to supply protection services officers (PSOs).[1] Kerberos contends that there were problems with Allied's performance, including ignoring the deaths of two people on federal premises. Kerberos began attempts to terminate the contract in December 2025. Despite receiving a Notice to Cure, Allied allegedly failed to satisfactorily cure the defaults within the cure period. On January 24, 2026, Kerberos issued a Notice of Termination pursuant to the subcontract effective immediately.

The Termination Notice required Allied to fully cooperate with the transition of services from the Effective Date through the Cutover Date of March 15, 2026, including by providing information, access, and support to Kerberos and any replacement resources. Allied was required to deliver staffing rosters, personnel records, clearances, qualifications, training status, sign-in/sign-out records, console/CCTV logs, incident reports, post orders, site SOPs, inventory and property reconciliation, and to provide availability for briefings and knowledge transfer. Also, Allied was to return weapons that Kerberos had leased to it.

Kerberos contends that, for several weeks, Allied indicated that it would not contest the termination. On January 29, 2026, Allied's president emailed her staff to cooperate with the transition, but, on February 17, Allied sent an email disputing Kerberos' right to terminate. Allied then formally contested the termination through its attorney. Allied contends that the termination was improper and seeks to continue performing under the subcontract. Kerberos counters that Allied's refusal to cooperate with an orderly transition threatens the continuity of security

---

[1] The facts are stated for the purpose of deciding this motion only.

operations at federal facilities in Memphis and poses a direct threat to the safety of federal employees, contractors, and visitors at those facilities.

Under the subcontract, the parties agreed to arbitrate all disputes before the American Arbitration Association ("AAA"). On February 23, 2026, at Allied's request that Kerberos waive the contractually mandated mediation process and proceed directly to arbitration, a dispute proceeding was initiated with the AAA. *Kerberos International, Inc. v. Universal Protection Service, L.P. d/b/a Allied Universal Security Services*, AAA Case Number: 01-26-0000-9112 (filed Feb. 23, 2026). At the March 9 hearing, the parties agreed that their contract is governed by the arbitration agreement.

On the same day that the arbitration was initiated (February 23, 2026), Kerberos filed a complaint in the Shelby County Chancery Court against Allied, seeking a TRO, preliminary injunction, and damages for the alleged breach of the parties' contract. According to Kerberos, Allied breached its subcontract to provide security services at various federal buildings located in Memphis, Tennessee, and failed to cure material defaults. According to Kerberos, it sought to preserve the "last peaceable status quo" - which Kerberos defines as after the transition began and before Allied disputed the termination. Kerberos contended that, in the absence of a TRO it would suffer irreparable harm because (1) the security and safety of federal employees, contractors, and visitors at federal facilities in Memphis would be jeopardized if Allied continued to provide inadequate security services or interfered with the transition to competent replacement; (2) Kerberos' performance obligations under its Prime Contract with the Department of Homeland Security would be compromised if Allied refused to cooperate with an orderly transition; and (3) the orderly transition of services required coordination and cooperation that could not be compelled through monetary damages alone. In effect, the TRO would prohibit Allied from

interfering with the transition of services and personnel from it to Kerberos. Kerberos sought a preliminary injunction with the same provisions.

A hearing on the motion for TRO was held on February 24, 2026, and it was granted ex parte.[2] The TRO expires March 11, 2026. Allied removed the case to this Court with jurisdiction predicated on diversity of citizenship, 28 U.S.C. § 1332.

Analysis

Allied has made several arguments as to why the TRO should be dissolved, including arguing that the TRO imposes wide-ranging mandatory injunctive relief that does not maintain the status quo between the parties. Allied defines "status quo" as being before Kerberos terminated the contract. Allied asks the Court to dissolve the TRO so that the parties can continue with arbitration, including seeking in arbitration any interim relief that the parties may need to maintain the status quo. According to Allied, the TRO assumes that Kerberos' termination of the subcontract was valid and grants Kerberos the ultimate relief that it is seeking in the arbitration — the turnover of Allied's work to Kerberos by the March 15 cutover date. Allied argues that allowing the TRO to stand and then issuing a preliminary injunction would render arbitration a "hollow formality" and "defeat the purpose of seeking limited injunctive relief in aid of arbitration." That is, if Allied is required to turn over everything by March 15, there is no way to ever "turn back the clock" if Allied prevails in arbitration. Kerberos would presumably take over PSO posts that Allied currently operates and hire away Defendant's PSOs, which cannot be undone if the arbitrator determines that the termination was invalid.

---

[2] The parties dispute whether Allied received timely notice of the hearing that was held on February 24. That dispute does not affect the decision of this Court.

Rather than looking at the merits of the parties' contentions, the Court must first determine if it is the correct forum for this dispute. As noted by Allied, the AAA rules provide for the assignment of an emergency arbitrator to provide any interim relief necessary to preserve the status quo in the arbitration. *See* AAA Com. Arb. R.39. Specifically, Rule 39 provides for the appointment of an emergency arbitrator within one business day of notice by the party seeking relief and with an expedited schedule for resolving the dispute. At the hearing, Kerberos did not contest Allied's reading of Rule 39 but, instead, argued that this Court would have more "teeth" than the AAA to enforce any violation of the injunction by Allied. However, Kerberos failed to convince the Court that this dispute, in its entirety, should not be before the arbitrator.

The Court agrees with Allied that Kerberos should have sought injunctive relief in the arbitration itself given that the parties had already filed a demand for arbitration and the AAA rules permit arbitrators to award injunctive relief, including on an expedited emergency basis. *See Scripps v. Agency for Performing, Arts, Inc.*, 2018 WL 2943956, at *2 (M.D. Tenn. June 12, 2018) ("[O]nce the arbitration begins, it is for the arbitrators to decide how to maintain the status quo during the pendency of the arbitration process. This approach will both minimize the district court's involvement in the merits of this contractual dispute, and it will preserve the ability of the arbitration panel to fully address the merits of the dispute.") Accordingly, the Court finds that the arbitrator is better suited to resolve this matter.

For these reasons, Allied's motion to dissolve temporary restraining order is **GRANTED**, and the temporary restraining order issued by the Shelby County Chancery Court on February 24, 2026, is hereby dissolved. Kerberos' motion for preliminary injunction or, alternatively, to extend temporary restraining order is **DENIED**. This order concludes the matters before the Court. *See*

*MI Rosdev Prop., L.P. v. Shaulson*, 2016 WL 5390802, at *4 (E.D. Mich. Sept. 27, 2016) (noting that dismissal is appropriate when all claims before the Court are subject to arbitration.)

IT IS SO ORDERED.

**s/ S. Thomas Anderson**
S. Thomas Anderson
United States District Judge

Date:  March 10, 2026.